IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 2 1 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| PAUL BOULS, KARAM BOULOS AND KIKO'S MEXICAN RESTAURANT<br>PLAINTIFFS § § § | |
| VS § | CAUSE NO. B-02-078 |
| § | |
| CITY OF HARLINGEN AND HARLINGEN POLICE CHIEF MICHAEL BLAKE<br>DEFENDANTS § § § § | |

CITY OF HARLINGEN'S
BRIEF ON FACIAL CONSTITUTIONALITY OF
ORDINANCE SECTION 110-05, HARLINGEN CODE OF ORDINANCES

May it Please the Court:

COMES NOW DEFENDANTS, the CITY OF HARLINGEN and POLICE CHIEF MICHAEL BLAKE (hereafter referred to as "CITY DEFENDANTS"), and file this their Brief pursuant to the Court's Order at the hearing held on Friday, June 14, 2002.

I.
FOCUS OF THE BRIEF

As per the Court's Order, this brief is limited to the issue of whether the CITY's noise ordinance, codified at §110.05, Harlingen Code of Ordinances (hereafter simply "§110.05" or "Noise Ordinance") is constitutionally valid on its face.

This brief does not address issues regarding whether the Noise Ordinance is constitutional as applied.

A certified copy of §110.05 is attached as Exhibit "A" to this brief.

## II.
## NATURE OF THE CASE & PROCEDURAL HISTORY

The pending controversy involves the CITY OF HARLINGEN'S efforts to enforce its Noise Ordinance by citing Plaintiff, an owner and operator of a local restaurant and drinking establishment known as Kiko's Restaurant, with a Class C citation for violation of the Noise Ordinance, §110.05.

Plaintiff responded by filing a state court lawsuit contending that the CITY's enforcement of its Noise Ordinance violate Plaintiff's constitutional rights. The allegations include both a facial attack on the constitutionality of the Noise Ordinance, as well as an "as applied" attack.

The CITY removed the state court lawsuit based on the claims of constitutional infirmity. In addition, the CITY responded by abating the prosecution of the municipal citation in the municipal court and authorizing instead an enforcement proceeding pursuant to Chapter 54 of the Texas Local Government Code. The Chapter 54 proceeding was filed as a counter-claim under the Court's supplemental jurisdiction. The CITY's intent was to guard against the claims of unconstitutionality by dove-tailing its enforcement proceedings with those challenging the constitutionality of the Noise Ordinance.

Consequently, although there is a live controversy pending before the Court, the issue of the facial validity *vel non* of §110.05 can be resolved first, before the CITY's enforcement efforts are fully consummated, thereby protecting the interests everyone concerned.

III.
PLAINTIFFS' ARGUMENTS

The Plaintiffs have alleged in their pleadings the following:

A. The ordinance is unconstitutionally vague, as it does not give fair or adequate notice. It violates due process as well as the First Amendment of the United States Constitution and Article I, Section 8 of the Texas Constitution. The ordinance fails to give a person of ordinary intelligence notice of the conduct prohibited. It restricts sound in its various forms that is "loud, vociferous, vulgar, indecent, lewd, or otherwise offensive to the public on or near the [licensed] premises." Therefore, the ordinance is constitutionally void for vagueness on its face. See Plaintiffs' Original Petition for Declaratory Judgment, Pgs. 3-4, Sec. V, A.

B. The ordinance is unconstitutionally overly broad as it creates a chilling effect with constitutionally protected speech or expression. It violates the First Amendment of the United States Constitution and Article I, Section 8 of the Texas Constitution. Furthermore, the City, through its ordinance, expands application of the ordinance "on or near the [licensed] premises." This over breadth potentially punishes those not involved with any prohibited activity. See Plaintiffs' Original Petition for Declaratory Judgment, Pg. 4, Sec. V, B.

IV.
SUMMARY OF CITY'S ARGUMENT

The Noise Ordinance is facially valid and therefore constitutional. It's focus is to maintain the peace and tranquility of the public, which is consistent with the

authority of a local government body under both Texas law as well as the U.S. Constitution.

First, §110.05 is narrowly tailored to the purpose for which it is intended. It applies only to establishments that are regulated by the Texas Liquor Control Act, that is, establishments that sell alcoholic beverages, and is therefore not overbroad.

Further the Noise Ordinance content neutral. It does not target the content of any music or sound, but rather is limited to sounds that is loud, vulgar, indecent, lewd, or otherwise offensive to the public.

Finally, the Noise Ordinance applies only too illegal noise that occurs on or near the licensed premises, thereby again circumscribing the geographic area affected by the Noise Ordinance.

For the foregoing reasons, the CITY OF HARLINGEN requests and prays for an adjudication from the Court that upholds the facial validity under the U.S. Constitution.

## V.
## LEGAL ARGUMENT & ANALYSIS

A.  **A City May Impose Reasonable Restrictions On Noise Under the U.S. Constitution.**

There should be little dispute that a local government has the authority to adopt ordinances designed to protect and maintain the peace and tranquility of the general public. The United States Supreme Court has consistently held that "even in a public forum, the government may impose reasonable restriction on the time, place, or manner of protected speech, provided the restrictions are "content neutral."

The three most relevant U.S. Supreme Court authorities addressing the facial validity of a noise regulation would be the following: *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989)(noise restrictions applicable to rock concert); *Grayned v. City of Rockford*, 408 U.S. 104 (1972)(conviction under noise ordinance upheld) and *Kovacs v. Cooper*, 336 U.S. 77 (1949)(conviction under anti-noise ordinance upheld); *but see Saia v. New York*, 334 U.S. 558, 562 (1948)(finding facial unconstitutionality of noise ordinance that vests unbridled discretion in police chief).

Here, a facial review of Noise Ordinance §110.05 reflects that it is narrowly tailored to legitimate government interest and that it is content neutral on its face.

B. **Noise Ordinance Applies Only to Licensees Under Texas Liquor Control Law & Is Narrowly Tailored (Not Overbroad).**

The Noise Ordinance, on its face, applies only to licensees or permittees under the Texas Liquor Control Act. In other words, the Noise Ordinance applies only to business entities whose operation entail the sale of alcoholic beverages. Consequently, the Noise Ordinance is not overbroad in that it does not regulate the general public, but rather only those persons whose business entails the sale of alcoholic beverages.[1]

---

[1] The Texas Alcoholic Beverage Code does not preempt a city from regulating certain occupations or activities at establishments licensed by the Texas Alcoholic Beverage Commission. *Robinson v. City of Longview*, 936 S.W.2d 413 (Tex.App.-Tyler 1996, no writ); *see also Banknote Club & Stan's Boilermaker v. City of Dallas*, 608 S.W.2d 716, 716-17 (Tex.Civ.App.--Dallas 1980, writ ref'd n.r.e.). To the contrary, "[s]hould the people's 'welfare' et cetera be affected by any other circumstance than the 'manufacture' et cetera of alcoholic beverages, then other statutes or city ordinances may address that

Further, the language cited by Plaintiffs as being overbroad and expansive actually narrows the category of persons who can complain of the "loud, vociferous, vulgar, indecent, lewd or other offensive" noise or sounds to the public who are on or live near the licensed premises.

This language in fact provides an enforcement gauge for the City and removes discretion from the City officials from arbitrarily and unreasonably enforcing the noise ordinance. There must be a demonstration of interference with the public either on the premises or those who live nearby, before the ordinance may be enforced.

The ordinance's primary aim is the regulation of conduct, the production of noise, which on its face does not in any way implicate free speech rights. "[W]here conduct and not merely speech is involved, ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)(statute regulating political activity of state employees not overbroad or vague on its face).

C.  **Noise Ordinance Is Content Neutral**

The City's ordinance is content-neutral. In determining content neutrality, "[t]he principal inquiry ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Rock Against Racism*, 491 U.S. at 791. The City's purpose, is to prohibit excessive noise, and to promote peaceful and respectful coexistence among

---

additional circumstance without being 'inconsistent' with the Alcoholic Beverage Code." *Banknote Club*, 608 S.W.2d at 718.

City Defendants' Brief Regarding
Constitutionality of Noise Ordinance                                    Page 6

the residents of the City. The ordinance "applies even-handedly to all" who create loud or unreasonable noise. *See e.g. Heffron v. International Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981). The Noise Ordinance does not does not target "speech" or noise in any particular manner or method.

D. **Alternative Channels**

The Noise Ordinance "leave[s] open ample alternative channels for communication." *Clark v. Community for Creative Non--Violence*, 468 U.S. 288, 293 (1984). The playing of music is not prohibited, only regulated, that is, reduced in volume, and Kiko's must demonstrate that "the remaining avenues of communication are inadequate." *Rock Against Racism*, 491 U.S. at 802. "[T]he First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places." *Members of City Council v. Taxpayers of Vincent*, 466 U.S. 789, 812(1984).

E. **Noise Ordinance Is Not Void For Vagueness**

The ordinance is not void for vagueness because "[a]n enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned*, 408 U.S. at 108. Due process demands that laws "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited," and "provide explicit standards for those who apply them." *Id.*, 408 U.S. at 108-09.

Where First Amendment freedoms are involved, a vague law causes citizens to " 'steer far wider of the unlawful, zone' than if the boundaries of the forbidden areas were clearly

marked." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964)(applying vagueness doctrine to statutory loyalty oaths for teachers).

In determining whether an ordinance is unconstitutionally vague, a court must examine the words of the ordinance itself, as well as interpretations of analogous laws, keeping in mind that "[c]ondemned to the use of words, ... mathematical certainty" is unattainable. *Grayned*, 408 U.S. at 110, 92 S.Ct. 2294. "[F]lexibility and reasonable breadth" in the language chosen is constitutionally acceptable. *Id.*

## VI.
## Conclusion & Prayer

Therefore, based on any one or more of the foregoing reasons, CITY DEFENDANTS request and pray that after due and proper consideration that the Court make a judicial determination that the CITY OF HARLINGEN Ordinance No. 110.05 is constitutional on its face.

Finally, CITY DEFENDANTS request and pray for any such other additional and further relief, at law or in equity, to which they are justly entitled.

Signed on the 21st day of June, 2002.

Respectfully submitted,

>DENTON, NAVARRO & BERNAL
>A Professional Corporation
>Bank of America Building
>222 East Van Buren, Suite 405
>Harlingen, Texas 78550
>956/421-4904
>956/421-3621 (Fax)
>
>By: /s/ Ricardo J. Navarro
>RICARDO J. NAVARRO
>State Bar No. 14829100
>So. Dist. ID No. 5953
>
>By: /s/ Lawrence J. Rabb
>LAWRENCE J. RABB
>State Bar No. 24002938
>Fed. Dist. No. 23712

## CERTIFICATE OF SERVICE

I certify that a true copy of this document has been sent by regular U.S. Mail, unless otherwise indicated, to the persons listed below on the 21st day of June, 2002.

Mr. David S. Gonzales   By CMRRR:7001 2510 0002 8954 9270
501 E. Tyler
Harlingen, Texas 78550

/s/ Ricardo J. Navarro
RICARDO J. NAVARRO
LAWRENCE J. RABB



**CITY OF HARLINGEN**

## CAPITAL OF THE LOWER RIO GRANDE VALLEY
"WORKING AS A TEAM TO PROVIDE QUALITY SERVICE WITH RESPECT AND FAIRNESS TO ALL CITIZENS"

C E R T I F I C A T I O N

I, Sylvia R. Trevino, hereby certify that I am the duly authorized City Secretary of the City of Harlingen, charged with keeping the records of the City of Harlingen, and that the attached is a true and correct copy of Ordinance No. 71-5 as approved by the Harlingen Elective Commission on February 17, 1971.

In witness whereof, I hereto set my hand and affix the official seal of the City of Harlingen this 2nd day of May, 2002.

_____
Sylvia R. Trevino, City Secretary

(Seal)

*Recipient Of Keep Texas Beautiful Governor's Achievement Award*

118 E. TYLER  •  P.O. BOX 2207  •  HARLINGEN, TEXAS 78551  •  (956) 427-8700

# CHAPTER 110: ALCOHOLIC BEVERAGES

Section

*General Provisions*

110.01  Definitions
110.02  Sales near churches, schools, and hospitals restricted
110.03  Consumption and possession in public restricted during specific times
110.04  Sale or delivery prohibited during certain times
110.05  Excessive or offensive noise prohibited where intoxicants sold

*License or Permit*

110.20  License or permit required
110.21  Fee schedule
110.22  Term; pro rata charges; expiration date; renewal
110.23  Form; display

## GENERAL PROVISIONS

### § 110.01 DEFINITIONS.

The definition of the following enumerated words shall be the definitions thereof as set forth in TEX. ALCO. BEV. CODE § 1.04: *ALCOHOLIC BEVERAGE, DISTILLED SPIRITS, LIQUOR, WINE AND VINOUS LIQUOR, ALE, MALT LIQUOR,* and *BEER.*
('73 Code, § 3-1) (Ord. 71-5, passed 2-17-71)

### § 110.02 SALES NEAR CHURCHES, SCHOOLS, AND HOSPITALS RESTRICTED.

No person or other entity shall sell any alcoholic beverage or operate any business for the sale of any alcoholic beverage, within 300 feet of any church, public school, or public hospital. The measurement of the aforesaid 300 foot distance shall be along the property lines of the street fronts and from front door to front door and in direct line across intersections, where they occur. This

provision is not intended to, shall not, and shall not be construed as violating, altering, amending, or being in conflict with any of the provisions of the Zoning Code or other ordinances or any other provision of this or other code ordinances of the city, this provision being cumulative of such regulations.
('73 Code, § 3-2) (Ord. 71-5, passed 2-17-71) Penalty, see § 10.99
*Cross-reference:*
   *Zoning Code, see Chapter 159*

### § 110.03 CONSUMPTION AND POSSESSION IN PUBLIC RESTRICTED DURING SPECIFIC TIMES.

It shall be unlawful for any person to consume any alcoholic beverage in any public place in the city, or any person to possess any alcoholic beverage in any public place in the city for the purpose of consuming the same in such public place, at any time on Sunday between the hours of 2:15 a.m. and 12:00 noon, and on all other days between the hours of 2:15 a.m. and 7:00 a.m.
('73 Code, § 3-3) (Ord. 71-5, passed 2-17-71) Penalty, see § 10.99

### § 110.04 SALE OR DELIVERY PROHIBITED DURING CERTAIN TIMES.

(A) It shall be unlawful for any person or entity to sell or deliver any liquor in the city on Sundays, on Christmas Day, or between 9:00 p.m. of one day and 10:00 a.m. of the following day, of every other day of the year. ('73 Code, § 3-4)

(B) It shall be unlawful for any person or other entity to sell beer or offer beer for sale on Sunday at any time between the hours of 2:00 a.m. and 12:00 noon and on any day other than Sunday at any time between the hours of 2:00 a.m. and 7:00 a.m. ('73 Code, § 3-5)
(Ord. 71-5, passed 2-17-71) Penalty, see § 10.99

### § 110.05 EXCESSIVE OR OFFENSIVE NOISE PROHIBITED WHERE INTOXICANTS SOLD.

It shall be unlawful for any licensee or permittee under the Texas Liquor Control Act, his agent, servant or employee, on premises under his control to maintain or permit a radio, television machine, amplifier, loudspeaker, public address system, piano, phonograph, music machine, orchestra, band, singer, speaker, entertainer, or any other device or person which produces, amplifies or projects music, noise, or other sound which is loud, vociferous, vulgar, indecent, lewd or otherwise offensive to the public on or near the license premises.
('73 Code, § 18-1.1) (Ord. 74-8, passed 3-20-74) Penalty, see § 10.99

## *LICENSE OR PERMIT*

### § 110.20  LICENSE OR PERMIT REQUIRED.

It shall be unlawful for any person or other entity to manufacture, distill, brew, sell, possess for the purpose of sale, import into this state, export from this state, transport, distribute, warehouse, solicit orders for, take orders for; or, for the purpose of sale, to bottle, rectify, blend, treat, fortify, mix, or process any liquor, distilled spirits, wine, vinous liquor, ale, malt liquor, beer, or other alcoholic beverage, in the city without first having obtained from the city through its Director of Finance, a permit or license of the class required to perform the act, acts, or business above enumerated. Such permits and licenses shall apply to the activity as defined in TEX. ALCO. BEV. CODE Chapters 12 through 74 for state licenses.
('73 Code, § 3-16) (Ord. 71-5, passed 2-17-71) Penalty, see § 10.99
*Statutory reference:*
   *Local fee authorized, see* TEX. ALCO. BEV. CODE *§ 11.38*

### § 110.21  FEE SCHEDULE.

There is hereby levied a license and/or permit fee for each of the licenses provided for in this subchapter, with the same to be collected in advance by the city, through its Director of Finance, prior to the issuance of such license or permit. Such annual license or permit fee shall be in the respective amounts and classes hereinafter specified for each respective type of license or permit, as follows:

(A) *Brewer's permit.* The annual city fee for a brewer's permit shall be $750.

(B) *Manufacturer's license.* For the first such factory for brewery there shall be annual city fee of $375; for the second such establishment, an annual fee of $750; for three to five of such establishments, $2,137.50; for over five such establishments, $4,200.

(C) *Distiller's and rectifier's permit.* The annual fee for a distiller's and rectifier's permit shall be $750.

(D) *Winery permit.* The annual city fee for a winery permit shall be $37.50.

(E) *Wholesaler's permit.* The annual city fee for a wholesaler's permit shall be $937.50.

(F) *General class B wholesaler's permit.* The annual city fee for a class B wholesaler's permit shall be $150.

(G) *Local class B wholesaler's permit.* The annual city fee for a local class B wholesaler's permit shall be $37.50.

(H) *Package store permit.* The annual city fee for a package store permit shall be $150.

(I) *Wine only package store permit.* The annual city fee for a wine only package store permit shall be $37.50.

(J) *Wine and beer retailer's permit.* The annual city fee for a wine and beer retailer's permit shall be $87.50.

(K) *Wine bottler's permit.* The annual city fee for a wine bottler's permit shall be $112.50.

(L) *General distributor's license.* The annual city fee for a general distributor's license shall be $150.

(M) *Local distributor's license.* The annual city fee for a local distributor's license shall be $37.50.

(N) *Branch distributor's license.* The annual city fee for a branch distributor's license shall be $37.50.

(O) *Retail dealer's on-premises license.* The annual city fee for a retail dealer's on-premises license shall be $75.

(P) *Retail dealer's on-premises late hours license.* The annual city fee for a retail dealer's on-premises late hours license shall be $125. Notwithstanding any other provision of this chapter the holder of a retail dealer's on-premises late hour license shall be limited to selling beer for on-premises consumption during the extended hours indicated.

(Q) *Retail dealer's off-premises license.* The annual city fee for a retail dealer's off-premises license shall be $30.

(R) *Mixed beverage permit.* The annual city fee for the renewal of a mixed beverage permit for each renewal after the expiration of three years from the date of issuance of the original mixed beverage permit shall be $312.50. Provided, however, that effective September 1, 1984, the annual city fee for such renewals shall be $375.

(S) *Bonded warehouse permit.* The annual city fee for a bonded warehouse permit shall be $75.

(T) *Mixed beverage late hours permit.* The annual city fee for a mixed beverage late hours permit shall be $75.

(U) *Caterer's permit.* The annual city fee for a caterer's permit shall be $250.

(V) *Wine and beer retail's off-premises permit.* The annual city fee for a wine and beer retailer's off-premises permit shall be $30.

(W) *Importer's permit.* The annual city fee for an importer's permit shall be $10.

(X) *Private club late hours permit.* The annual city fee for a private club late hours permit shall be $375.

(Y) *Daily temporary mixed-beverage permit.* The city fee for a daily temporary mixed-beverage permit shall be $25 per day.
('73 Code, § 3-17) (Ord. 71-5, passed 2-17-71; Am. Ord. 74-15, passed 5-15-74; Am. Ord. 83-110, passed 12-13-83) Penalty, see § 10.99

### § 110.22 TERM; PRO RATA CHARGES; EXPIRATION DATE; RENEWAL.

The term of the license or permit required by this subchapter shall be for a one year period. Should the initial such permit or license to each applicant be issued at any time other than January 1 or 2 of each calendar year, such applicant shall be charged and shall pay a first such license or permit fee in a pro rata amount for the remaining portion of the calendar year in which initially issued, and with the remaining portion of the month in which issued to count as a full month in determining the pro rata charge for such initial license or permit fee. Such initial license or permit shall expire on December 31 of the calendar year in which issued, and the holder thereof, as a lawful prerequisite to continue the handling of alcoholic beverages as authorized by such license or permit, shall first obtain a renewal license or permit for the succeeding calendar year and each calendar year thereafter during which the handling of such alcoholic beverages is conducted by the holder of such license.
('73 Code, § 3-18) (Ord. 71-5, passed 2-17-71)

### § 110.23 FORM; DISPLAY.

The license or permit required by this subchapter shall be on a form prescribed by the Director of Finance and such license shall be displayed at all times in some conspicuous place within the premises and place of business of the person or entity holding such permit or license.
('73 Code, § 3-19) (Ord. 71-5, passed 2-17-71) Penalty, see § 10.99