IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 0 3 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| PAUL BOULS, KARAM BOULOS AND | § | |
| KIKO'S MEXICAN RESTAURANT | § | |
| Plaintiffs | § | |
| | § | |
| VS | § | CAUSE NO. B-02-078 |
| | § | |
| CITY OF HARLINGEN, TEXAS AND | § | |
| POLICE CHIEF MICHAEL BLAKE | § | |
| Defendants | § | |

CITY OF HARLINGEN'S OBJECTION &
RESPONSE TO PLAINTIFFS'
MOTION FOR ATTORNEY FEES

_____

May it Please the Court:

COMES NOW DEFENDANTS/COUNTER-PLAINTIFFS, the CITY OF
HARLINGEN and POLICE CHIEF MICHAEL BLAKE (hereafter referred to
as "CITY DEFENDANTS"), and file this Objection and Response to
Plaintiffs' Motion for Attorneys Fees.

SUMMARY OF THE OBJECTIONS & RESPONSE

CITY DEFENDANTS object to the award of any attorney's fees
in favor of Plaintiff for the following reasons:

A. The CITY OF HARLINGEN is entitled to government immunity
   from an application for fees under the Texas Uniform
   Declaratory Judgment Act, codified at Chapter 37 of the
   Tex. Civ. Prac. & Rem. Code (hereafter "the Dec Act").
   Contrary caselaw notwithstanding, the Texas Legislature
   amended the Code Construction Act in 2001 requiring that
   statutory enactments provide clear and unambiguous waivers
   of immunity. *See* §311.034, Tex. Gov't Code.

City Defendant's Objection & Response to
Plaintiff's Motion for Attorneys Fees                           Page 1

B.   Assuming, *arguendo*, a waiver of government immunity, the substantive standard for an award of fees under §37.009, Tex. Civ. Prac. & Rem. Code, is not satisfied, given the factual and procedural history of the controversy.

C.   Assuming, again *arguendo*, that an award of some fees is warranted, the amount of fees requested by Plaintiff's counsel is excessive and neither "equitable" nor "just", as required by the Dec Act.

### FACTUAL BACKGROUND & PROCEDURAL HISTORY

This controversy had its beginnings in the Summer 2001, after Kiko's Restaurant, owned and operated by Plaintiff Bouls, constructed an outdoor patio area on its property and began to play loud music late at night.

Adjoining residents, consisting largely of retirees who lived in the neighboring trailer parks, began making noise complaints to the CITY OF HARLINGEN, via its police department. It is true, as alleged in Plaintiff's live petition, that there were an extraordinary number of calls and complaints about the restaurant, which prompted visits by the police.   CITY OF HARLINGEN Police investigated the complaints and took decibel readings, but attempted to ameliorate the problem by asking the restaurant owners to turn down the music.   Nevertheless, complaints about noise disruption persisted.   Adjoining residents began appearing at City Commission meetings insisting that city officials "do something" about the noise problem.

In March 2002 in connection with a specific complaint, and after due investigation by the patrol officer who made the scene, Plaintiff Bouls was issued a citation for violation of

§110.05, Harlingen City Code, also known as the "Noise Ordinance."[1]

Bouls subsequently sued the CITY OF HARLINGEN and POLICE CHIEF MICHAEL BLAKE. In his petition, Plaintiff asserted violations of his state and federal rights, which led to the removal of the lawsuit to U.S. District Court.

Given the growing public interest in and impact of the controversy, the CITY OF HARLINGEN, seeking a reasoned solution to an obviously contentious situation developing between the restaurant and the adjoining neighbors, authorized the filing of a civil enforcement action under Chapter 54, Tex. Loc. Gov't Code. The Chapter 54 action was intended to substitute a civil injunctive remedy for the criminal proceeding previously initiated in the municipal court via the citation. Although the Chapter 54 proceeding still turned on the viability of the Noise Ordinance, the remedy was more injunctive, rather than penal, in nature.

From the outset, however, and in view of Plaintiff's contention that the Noise Ordinance (§110.05) was unconstitutional, both under the state and federal Constitutions, the parties agreed to secure a ruling from this Court on the issue of facial constitutionality preliminary to any further proceedings, including discovery. And this is in

---

[1]  Plaintiff Bouls refused to sign the citation (ostensibly on advice of counsel), even after the investigating officer explained that the signature was simply a promise to appear in municipal court. Given his refusal to sign, Bouls was taken into custody and transported to the police station. Once there, and after further explanation, Bouls signed the citation, thereby evidencing his promise to appear in court. He was then immediately released. At no time was Bouls actually incarcerated.

City Defendant's Objection & Response to
Plaintiff's Motion for Attorneys Fees                                Page 3

fact, how the controversy was, quite properly, handled before the Court.

The Court's ruling holding that the Noise Ordinance does not pass federal constitutional muster has allowed the CITY to clarify its position with respect to two interested groups of persons. First, and most obviously, the CITY is not going to pursue enforcement of the Noise Ordinance. Second, the CITY OF HARLINGEN has made it clear to the adjoining residents that, absent a criminal charge under §42.01, Tex. Penal Code, the CITY OF HARLINGEN has no role to play in the controversy. The affected neighbors must look to private remedies as between themselves and the restaurant owners.[2]

On the heels of the Court's Order striking the Noise Ordinance as unconstitutional, Plaintiff has filed a motion for an award of fees pursuant to §37.009, Tex. Civ. Prac. & Rem. Code. The CITY OF HARLINGEN, for the reasons summarized above, and as more fully explained below, requests that the Court deny the request for an award of fees. Alternatively, should the Court find that an award of fees is warranted, then the amount of such fees should be substantially less than the amount requested by Plaintiff's counsel.

---

[2] The CITY does not abandon its position that any body politic, including the CITY OF HARLINGEN, has a legitimate interest in, and a certain police power, regulating noise complaints between and among its residents. The cases supporting the constitutionality of such police powers, properly drawn, are cited in the CITY's brief. The CITY understands the Court's ruling to be limited to the constitutionality of the particular Noise Ordinance at issue in this controversy, and that it does not preclude the CITY from adopting in the future a more artfully drawn ordinance which likely would pass constitutional muster.

City Defendant's Objection & Response to
Plaintiff's Motion for Attorneys Fees                                    Page 4

## ARGUMENT & AUTHORITIES

**A.   Government Immunity Under Texas Law Precludes the Award of Attorneys Fees under Chapter 37, Tex. Civ. Prac. & Rem. Code.**

Texas law recognizes the doctrine of government immunity from suit and from liability, unless waived by constitutional or statutory authority. *See City of San Antonio v. Rodriguez*, 856 S.W.2d 552, 556 (Tex.App.-San Antonio,1993)(citing *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976)), *rev'd on other grounds*, 828 S.W.2d 417 (Tex.). Here, Plaintiff's request for fees is limited to the Dec Act, which defines "person" as including municipal corporations. *See*, §37.001, Tex. Civ. Prac. & Rem. Code.

Up until the 2001 Legislative Session, the Texas Supreme Court had resolved the issue of whether the Dec Act waived government immunity against municipal governments. *See Texas Education Agency v. Leeper*, 893 S.W.2d 432 (Tex. 1994). *Leeper* held, in 1994, that the Dec Act, as defined and structured, necessarily waived immunity for the purpose of such fees. 893 S.W.2d at 446.

However, in the 2001 Legislative Session, the Texas Legislature amended the Code Construction Act, codified at Chapter 311, Tex. Gov't Code, in a manner that directly repudiates the holding of *Leeper*. The Code Construction Act applies to the interpretation of the Texas Civil Practice & Remedies Code, including the Uniform Declaratory Judgment Act, codified at Chapter 37, Tex. Civ. Prac. & Rem. Code. *See* §311.002, Tex. Gov't Code.

Section 311.034, effective June 15, 2001, provides in pertinent part as follows:

> ... a statute shall not be construed as waiver of
> sovereign immunity unless the waiver is effected by
> clear and unambiguous language. In a statute, the use
> of "person" as defined by Section 311.005 to include
> governmental entities, does not indicate legislative
> intent to waive sovereign immunity unless the context
> of the statute indicates no other reasonable
> construction.

Added by Act. 2001, 77th Leg., ch. 1158, §8, eff. June 15, 2001
(copies attached as Exhibit A.).

In view of this legislative change, it is no longer certain whether *Leeper* has any continued viability, and this matter is in litigation in connection with other similar statutory provisions. *See Texas Department of MHMR v. Lee*, 38 S.W.3d 862, 870-71 (Tex.App.-Ft.Worth, 2001, *Petition Pending*)(statutory language in Health & Safety Code not a clear waiver of immunity); *see also Central Counties Center for Mental Health & Mental Retardation Services v. Rodriguez*, 45 S.W.3d 707 (Tex.App.-Austin, 2001, *Petition Pending*)(holding opposite of *TDMHMR v. Lee*); and *Center For Health Care Services v. Quintanilla*, 2002 WestLaw 1473619 (Tex.App.-San Antonio,2002.)[3]

The effect of §311.034 on the question is readily expressed in the State Attorney General's letter brief to the Texas Supreme Court on this point. *See Letter Brief from A.G. Cornyn to Texas Supreme Court dated 12/5/2001*, attached as Exhibit B. In view of the subsequent legislative developments, Plaintiff's application for fees under the Dec Act should be denied as barred by government immunity.

---

[3] Undersigned counsel's law partner is defending the Center for Health Care Services involved in this litigation, which contains this issue of waiver, and which is the source of undersigned counsel's access to the A.G. Letter Brief attached as Exhibit B to this response.

**B.    An Award of Fees is Neither "Equitable or Just" in the Context of this Controversy.**

Subject to the foregoing argument, and assuming that the Court finds a waiver of immunity is effectuated in the Dec Act, the standard set by the Act for an award provides in pertinent part that a court " may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex.Civ.Prac. & Rem.Code Ann. § 37.009 (Vernon 1997).

The statute, and Texas caselaw, provides then that such an award is discretionary, not mandatory. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 888 (Tex.2000); *see also Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637-38 (Tex.1996)(award of fees based on court's discretion, not on prevailing party status). Prevailing party status, should the Court find such for Plaintiffs, does not require or mandate an award of attorney fees. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex.1998). "A prevailing party in a declaratory judgment action is not entitled to attorneys fees simply as a matter of law; entitlement depends upon what is equitable and just and the trial court's power is discretionary in that respect." *See Sharp v. Hobart Corp.*, 957 S.W.2d 650, 654 (Tex.App.-Austin 1997, no writ) (citing *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990)).

Since there was no award of money damages in this matter, and no finding of any violation of a constitutional rights, and therefore no apparent "prevailing party" in the legal sense of the term, it is within the trial court's discretion to decline to award attorney's fees. *See Mendleski v. Silvertooth,* 798 S.W.2d 30, 32 (Tex.App.-Corpus Christi 1990, no writ.) (holding that in declaratory judgment action based on construction of a

contract where there is no apparent prevailing party, the trial court has discretion to refuse any award of attorney's fees).

Given the public need generated by the conduct of the Plaintiff, and the response thereto by the adjoining residents), the efforts by the CITY to police the controversy were, on the whole, justified and warranted. Further, the foundational issues related to the constitutionality of the Noise Ordinance were addressed first and foremost, as they should have been. For these reasons, the CITY requests that the Court decline to award Plaintiff any attorneys fees as a matter of the Court's discretion. Each party should be left to bear their own fees and costs.

## C. The Attorney Fee Request of $27,370 Is Neither Fair Nor Reasonable.

Assuming again, for the sake of argument, that the Court finds that an award of fees is warranted, the CITY objects to the specific amount of fees requested by Plaintiff against the CITY.

It was Plaintiff's inability (or perhaps an unwillingness) to seek a neighborly compromise which would moot this controversy that eventually resulted in intervention by the CITY via its police authority. When, after a duly investigated complaint, a HARLINGEN partol officer cited Bouls for a violation of the noise ordinance, he was asked to sign off on the citation as a promise to appear in court. He refused, thereby leaving the patrol officer no alternative but to take Bouls into custody. As previously explained, Bouls did later sign the citation and, upon doing so, was released from the police station that same evening.

Plaintiff's counsel filed a state court lawsuit, which alleged federal complaints. CITY DEFENDANTS removed it to U.S. District Court. The CITY then filed a Chapter 54, Tex. Local Gov't Code civil enforcement action in lieu of the municipal court citation. This Court granted the CITY temporary injunctive relief, which went a long way towards quelling the growing controversy between the restaurant and its neighbors.

Counsel for the parties stipulated and agreed that there existed a seminal issue over whether the underlying Noise Ordinance was constitutional under the U.S. Constitution. To avoid unnecessary litigation, counsel for the parties agreed to brief the issue and submit it to the Court for a ruling. This was done. The Court found the Noise Ordinance unconstitutional and dismissed the case. The Noise Ordinance, in its existing incarnation as §110.05, is no more.

Assuming that the Court is inclined to award fees, they must be "reasonable and necessary", which are matters of fact, and they must be "equitable and just", which are matters of law. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998). Additionally, a trial court cannot take judicial notice of reasonable attorney's fees in declaratory judgment suit. *See GeoChem Tech. Corp. v. Verseckes*, 929 S.W.2d 85, 93 (Tex.App. Eastland 1996), *rev'd on other grounds*, 962 S.W.2d 541 (Tex.1998). A party seeking to recover attorney's fees in a declaratory judgment action must prove that the fees are reasonable and necessary. *See GeoChem*, 929 S.W.2d at 93 (finding some evidence on attorney's fees). The party requesting fees enjoys neither a presumption of reasonableness nor the availability of judicial notice which is available for claims under Chapter 38, Tex. Civ.

*Prac. & Rem. Code.  See* §38.001, Tex. Civ. Prac. & Rem. Code; *see also GeoChem,* 929 S.W.2d at 93.

Using the standard lodestar approach to fees, that is, reasonable hourly rate times a reasonable number of hours, CITY DEFENDANTS do not contest that the rate charged by counsel of $85.00 an hour is unreasonable.  *See* Navarro Affidavit, attached as Exhibit C.

CITY DEFENDANTS do contend, however, that the number of hours sought to be compensated, is far in excess of what is reasonable and necessary and what would be equitable and just. Again, CITY DEFENDANTS contend that each party should be left to bear its own costs, including attorneys fees.  But if the Court is going to award fees, then the number of hours to be allowed should be proportionate to the work done in connection with the legal question of the constitutional validity of the Noise Ordinance.

In this regard, Plaintiff's request for compensation of 322 hours of legal work (amounting to eight forty hour work-weeks of time) is far in excess of what is merited.  While Plaintiff should perhaps be compensated for the work reasonably related to the constitutionality of the Noise Ordinance, Plaintiff should not be rewarded with payment for all other work.

Here, without conceding the matter, an allocation of thirty-five to forty hours of attorney time, that is, about one full work-week, more appropriately reflects the reasonable attorney time related to briefing the issue of constitutionality.  *See* Navarro Affidavit, attached as Exhibit C.

## CONCLUSION AND PRAYER

Therefore, based on the foregoing reasons, CITY DEFENDANTS request that after due and proper consideration of this response that the Court in fairness and equity deny the Plaintiffs' request for attorney fees.

Alternatively, CITY DEFENDANTS request that the Plaintiff be compensated for a diminished amount of fees commensurate with the briefing on the issue of constitutionality only.

Finally, CITY DEFENDANTS request and pray for any such other additional and further relief, at law or in equity, to which they are justly entitled.

Signed on the 3rd day of September, 2002.

Respectfully submitted,

**DENTON, NAVARRO & BERNAL**
A Professional Corporation
Bank of America Building
222 East Van Buren, Suite 405
Harlingen, Texas 78550
956/421-4904
956/421-3621 (Fax)

By: _____
RICARDO J. NAVARRO
State Bar No. 14829100
So. Dist. ID No. 5953
LAWRENCE J. RABB
State Bar No. 24010328
So. Dist. No. 23712

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PAUL BOULS, KARAM BOULOS AND | § | |
| KIKO'S MEXICAN RESTAURANT | § | |
| Plaintiffs | § | |
| | § | |
| VS | § | CAUSE NO. B-02-078 |
| | § | |
| CITY OF HARLINGEN, TEXAS AND | § | |
| POLICE CHIEF MICHAEL BLAKE | § | |
| Defendants | § | |

ORDER ON PLAINTIFFS' APPLICATION FOR ATTORNEYS FEES

On this day the Court considered Plaintiff's Application for Attorney Fees, filed pursuant to §37,009, Tex. Civ. Prac. & Rem. Code, also known as the Texas Uniform Declaratory Judgment Act. After consideration of the Motion, the Response filed thereto, and the arguments of counsel at the hearing on this matter, the Court finds that the Motion for Attorneys Fees should be DENIED.

It is therefore ORDERED the Plaintiff's Motion for Attorneys Fees should be DENIED. It if further ORDERED that each party shall bear their own costs and fees. SO ORDERED.

SIGNED on the _____ day of _____, 2002.


_____
HON. FILEMON VELA
U.S. DISTRICT JUDGE

EXHIBIT" _A_ "

# TITLE 3. LEGISLATIVE BRANCH

## SUBTITLE B. LEGISLATION

### CHAPTER 311. CODE CONSTRUCTION ACT

### SUBCHAPTER C. CONSTRUCTION OF STATUTES

Copr. © West Group 2002. All rights reserved.

Current through End of 2001 Regular Session.

§ 311.034. Waiver of Sovereign Immunity

In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person," as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction.

CREDIT(S)

2002 Electronic Update

 Added by Acts 2001, 77th Leg., ch. 1158, § 8, eff. June 15, 2001. 

<General Materials (GM) - References, Annotations, or Tables>

V. T. C. A., Government Code § 311.034

TX GOVT § 311.034

END OF DOCUMENT

EXHIBIT" ___4___ "

# TITLE 3. LEGISLATIVE BRANCH

## SUBTITLE B. LEGISLATION

## CHAPTER 311. CODE CONSTRUCTION ACT

## SUBCHAPTER A. GENERAL PROVISIONS

Copr. © West Group 2002. All rights reserved.

Current through End of 2001 Regular Session.

§ 311.005. General Definitions

The following definitions apply unless the statute or context in which the word or phrase is used requires a different definition:

(1) "Oath" includes affirmation.

(2) "Person" includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity.

(3) "Population" means the population shown by the most recent federal decennial census.

(4) "Property" means real and personal property.

(5) "Rule" includes regulation.

(6) "Signed" includes any symbol executed or adopted by a person with present intention to authenticate a writing.

(7) "State," when referring to a part of the United States, includes any state, district, commonwealth, territory, and insular possession of the United States and any area subject to the legislative authority of the United States of America.

(8) "Swear" includes affirm.

(9) "United States" includes a department, bureau, or other agency of the United States of America.

(10) "Week" means seven consecutive days.

(11) "Written" includes any representation of words, letters, symbols, or figures.

(12) "Year" means 12 consecutive months.

(13) "Includes" and "including" are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.

CREDIT(S)

1998 Main Volume

Acts 1985, 69th Leg., ch. 479, § 1, eff. Sept. 1, 1985. Amended by Acts 1989, 71st Leg., ch. 340, § 1, eff. Aug. 28, 1989.

<General Materials (GM) - References, Annotations, or Tables>

## HISTORICAL AND STATUTORY NOTES

1998 Main Volume

**Prior Laws:**

Acts 1967, 60th Leg., p. 1036, ch. 455, § 1.

Vernon's Ann.Civ.St. art. 5429b-2, § 1.04.

## CROSS REFERENCES

EXHIBIT" _B_ "

a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person," as defined by Section 311.005 [of the Government Code] to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction.

*Id.*

Apart from the introductory clause, this language is identical to language in H.B. 2809, 77th Leg., R.S., §2 (2001), which was attached as Tab 1 to the State's *Lee, Fiske,* and *Taylor* briefs on the merits. H.B. 2809, like H.B. 2914, would have amended the Code Construction Act by adding §311.034, but it was vetoed by Governor Perry for reasons unrelated to this particular amendment. *See* Lee Respt's. Br. at 9-10 & n.9, Tabs 1-2; Fiske Petr's Br. at 8-10 & n.8, Tabs 1-2; Taylor Petr's Br. at 8-10 & n.7 & Tabs 1-2.

The State has argued in *Lee, Fiske,* and *Taylor* that, notwithstanding Governor Perry's veto, H.B. 2809 demonstrates legislative repudiation of the notion that waiver of sovereign immunity may be inferred from the definition of a term used in a statute. *See* Lee Respt's. Br. at 9-10 & n.9, Tabs 1-2; Fiske Petr's Br. at 8-10 & n.8, Tabs 1-2; Taylor Petr's Br. at 8-10 & n.7 & Tabs 1-2. Consequently, it would be error to infer a waiver of sovereign immunity in Texas Health and Safety Code §321.003—the statute at issue in *Lee, Fiske,* and *Taylor*—solely based on the definition of the term "mental health facility" that appears in that statute. *See* Lee Respt's. Br. at 10, Tab 1; Fiske Petr's Br. at 10, Tabs 1; Taylor Petr's Br. at 9-10, Tab 1.

The State's argument is even stronger in light of H.B. 2914, which was signed into law. H.B. 2914 amended the Code Construction Act by adding §311.034 and including language identical to H.B. 2809. As a result, the Code Construction Act now makes clear that the mere inclusion of governmental entities within the definition of a term used in a statute is not evidence of legislative intent to waive sovereign immunity. *See* TEX. GOV'T CODE §311.034.

For this reason, in addition to the reasons set forth in the State's *Lee, Fiske,* and *Taylor* briefs, the Court should hold that Texas Health and Safety Code §321.003 does not waive sovereign immunity.

Sincerely,

Lisa R. Eskow
Assistant Solicitor General

2

**EXHIBIT"** _C_ **"**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAUL BOULS, KARAM BOULOS AND          §
KIKO'S MEXICAN RESTAURANT             §
          Plaintiffs                  §
                                      §
VS                                    §          CAUSE NO. B-02-078
                                      §
CITY OF HARLINGEN, TEXAS AND          §
POLICE CHIEF MICHAEL BLAKE            §
          Defendants                  §

AFFIDAVIT ON ATTORNEYS FEES
BY RICARDO J. NAVARRO

---

STATE OF TEXAS                §

COUNTY OF CAMERON             §

BEFORE ME, the undersigned Notary Public, on this day personally appeared, RICARDO J. NAVARRO, who being by me duly sworn and known to be the person whose signature appears below, stated on oath the following:

My name is RICARDO J. NAVARRO. I am over the age of twenty-one (21) years, of sound mind and fully capable of making this affidavit. The testimony provided below is all within my personal knowledge and it is true and correct.

This affidavit is for the purpose of addressing the issue of reasonable and necessary attorneys fees, which have been requested by opposing counsel, Mr. David Gonzalez III pursuant to Chapter 37, Tex. Civ. Prac. & Rem. Code.

**Qualifications**

As reflected in the Resume attached to this Affidavit, I am a licensed attorney by the Texas Supreme Court and have been so licensed in good standing since November 1985. Since 1986, after the conclusion of my employment as a federal briefing attorney, my practice has been primarily on behalf of local government entities, including the

Affidavit of Ricardo J. Navarro                                    Page 1

**EXHIBIT" _C_ "**

representation of elected and appointed officials and employees.

In this regard, over the last 16 years, I have had occasion to address the issue of what constitutes a reasonable and necessary attorneys fees in connection with certain fee shifting statutes, including that contained in the Texas Uniform Declaratory Judgment Act, codified at Chapter 37, Tex. Civ. Prac. & Rem. Code.

## Attorneys Fees Calculation

### Lodestar Approach

In my experience, once a trial court has determined that an award of fees is warranted, the most typical formula is based on a lodestar calculation, that is, a calculation of a reasonable hourly rate times a reasonable number of hours.

### Reasonable Hourly Rate

Here, there is no dispute that the rate of $85.00 per hour for Attorney Gonzalez would be a reasonable rate, so this component of the formula is not controverted.

### Reasonable Attorney Hours

What is controverted, however, is the number of hours being requested. Attorney Gonzales' request that he be compensated for 322 hours of attorney time, in light of the short factual and procedural history of the lawsuit, is not, in my professional opinion, neither reasonable and necessary nor equitable and just.

The parties' agreement to address the issues of constitutionality first averted the expenditure of time and expense averted. Assuming, without conceding, that Plaintiff's counsel should receive a fee award under Chapter 37 of the Texas Civil Practice & Remedies Code, a more reasonable number of hours would be closer to 35-40 hours of time for the work on which Plaintiff "prevailed."

FURTHER AFFIANT SAYETH NOT.


Affidavit of Ricardo J. Navarro                                    Page 2

_____
RICARDO J. NAVARRO
ATTORNEY AT LAW

SUBSCRIBED AND SWORN TO BEFORE ME a Notary Public In and For the State of Texas on this _3rd_ day of September, 2002, to certify which witness my hand and official seal.



NORMA G. DELGADO
Notary Public, State of Texas
My Commission Expires
NOV. 5, 2002

_Norma G. Delgado_
NOTARY PUBLIC, State of Texas

Printed Name: _NORMA G. DELGADO_

My commission expires: _11/05/02_

Affidavit of Ricardo J. Navarro                                    Page 3

# *RICARDO J. NAVARRO*

**Admitted to Practice Before**

> Supreme Court, State of Texas (November 1985)
> United States Supreme Court (October 1992)
> United States Court of Appeals for the Fifth Circuit (April 1986)
> United States District Courts:
>> Western District of Texas (September 1986)
>> Southern District of Texas (April 1986)

**Experience**

> Partner, Denton, Navarro & Bernal, P.C., San Antonio & Harlingen, Texas; June 1991 - Present

> Chief, Civil Section, Fred G. Rodriguez, Criminal District Attorney for Bexar County, Texas; November 1989 to January 1991

> Assistant District Attorney, Civil Section, Fred G. Rodriguez, Criminal District Attorney for Bexar County, Texas; August 1987 to January 1991

> Associate Attorney, Bickerstaff, Heath & Smiley, Austin, Texas; Associate Attorney; August 1986 to August 1987

> Briefing Attorney, Hon. Reynaldo G. Garza, Senior Circuit Judge, U.S. Court of Appeals for the Fifth Circuit, Brownsville, Texas; August 1985 to August 1986

**Education**

> University of Texas School of Law
>> Juris Doctor Degree - December 1984
> University of Texas at Austin.
>> B.A. - December 1978
> Universidad de las Americas, Cholula, Puebla, Mexico
> University of Michigan, Ann Arbor, Michigan

## Presentations

| | |
|---|---|
| May 2002 | Speaker at State Bar of Texas: Federal Litigation Seminar held in Houston and San Antonio, Texas; Topic: Trial Preparation, Evidence, & Post-Trial Motions. |
| June 2001 | Speaker at Texas City Attorney's Association Semi-Annual Conference held in South Padre Island: Topic: Legislative Immunity Under Texas Law. |
| July 1999 | Speaker at Suing and Defending Government Entities Seminar held in San Antonio, Texas; Topic: Panel Moderator on Litigating High Profile Cases and Dealing with the Media. |
| August 1998 | Speaker at Texas City Attorney's Association Semi-Annual Conference held in San Antonio, Texas. Topic: Litigating High Profile Cases & the Media. |
| September 1996 | Speaker at Federal Civil Litigation seminar in San Antonio, Texas, sponsored by Lorman Business Center, Inc. Topic: Trial Procedures. Included preparation of written material |
| July 1996 | Speaker at National Association of Legal Assistants 21st Annual Workshop in New Orleans, Louisiana. Topic: High Profile Civil Actions. Included preparation of written material |
| September 1995 | Speaker at Federal Civil Litigation seminar in San Antonio, Texas, sponsored by Lorman Business Center, Inc. Topic: Trial Procedures. Included preparation of written material |
| February 1995 | Speaker at TML William "King" Cole Effective Local Government Management Series in New Braunfels, Texas. Topic: Avoiding Wrongful Termination Through Updated Personnel Policies and Procedures |
| June 1994 | Speaker at Government Lawyers' Section Meeting at the State Bar of Texas Annual Meeting in Austin, Texas. Topic: Individual Immunity Under State Law |
| May 1994 | Speaker at Texas Association of Legal Secretaries Annual Meeting in San Antonio, Texas. Topic: Sexual Discrimination/Harassment |
| June 1993 | Speaker at Municipal Law Symposium sponsored by St. Mary's University School of Law and the Texas City Attorneys Association. Topic: Employment Discrimination Update. Included preparation of written material |

| | |
|---|---|
| March 1993 | Speaker at National Association of Legal Assistants Seventh Annual Mid-Year Conference in El Paso, Texas. Topic: Suing and Defending Government entities. Included preparation of written material |
| November 1992 | Speaker at Golden Crescent Regional Public Employment Law Conference - Victoria, Texas. Topic: Sexual Harassment. Included preparation of written material |
| October 1992 | Speaker at National College of District Attorney's Civil Law Seminar - San Antonio, Texas. Topic: Section 1988 Attorney's Fees Awards Under The Civil Rights Act of 1976. Included preparation of written material |
| October 1991 | Speaker at National College of District Attorney's Civil Law Seminar - Colorado Springs, Colorado. Topic: Section 1988 Attorney's Fees Awards Under The Civil Rights Act of 1976. Included preparation of written material |
| May 1991 | Speaker at Texas District and County Attorneys Association Civil Law Seminar - Austin, Texas. Topic: Labor Relations - Civil Service, Whistle Blowers and Drug Testing. Included preparation of written material |
| September 1991 | Speaker at National College of District Attorneys Public Sector Legal Practice Seminar - Colorado Springs, Colorado. Topic: Section 1988 Attorney's Fees. Included written materials |
| May 1990 | Speaker at Texas District and County Attorneys Association Civil Law Seminar - Houston, Texas Topic: Section 1983 Litigation. Included preparation of written material |